IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| BERRY GREEN, | |
| Plaintiff, | CIVIL ACTION NO.: 2:22-cv-109 |
| v. | |
| OFFICER CAMARILLO, OFFICER WEST, and OFFICER TUCKER, | |
| Defendants. | |

**O R D E R**

Defendants filed a Motion to Dismiss. Doc. 44. Plaintiff initially informed the Court he did not receive a copy of Defendants' Motion. Doc. 47. Defendants then informed the Court they mailed an additional copy of the Motion due to a potential address error. Doc. 48. Plaintiff then filed a Response in opposition. Doc. 58. Plaintiff's Response demonstrates Plaintiff did, in fact, receive the second copy of the Motion to Dismiss. Defendants then filed a Reply. Doc. 60. For the following reasons, I **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's Complaint in its entirety, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.[1]

**BACKGROUND**

Plaintiff brought this suit asserting claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act, 28 U.S.C.

---

[1] Plaintiff consented to the undersigned's plenary review. Doc. 14.

§§ 1346(b), 2671–80 ("FTCA"). Doc. 1. This Court ordered service of Plaintiff's claims on February 21, 2023. Doc. 26.

Plaintiff was a federal prisoner at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), during the relevant time period. Doc. 1 at 4–5. Defendants were correctional officers at FCI Jesup at the time. Id. at 2–3. Plaintiff alleges Defendants attacked him on February 6, 2020, while his arms were hanging out of a tray slot in his cell door. Id. at 5. Plaintiff alleges Defendants twisted and dislocated his arms, resulting in injuries to Plaintiff's neck, back, and shoulder. Id. Plaintiff seeks monetary damages for violations of his Eighth Amendment rights and for negligence under the FTCA. Id.; Doc. 1-1 at 1–4.

## DISCUSSION

Defendants argue Plaintiff's Bivens claims should be dismissed because Plaintiff failed to exhaust his administrative remedies, Plaintiff's claims are not cognizable under Bivens, Defendants are entitled to qualified immunity, and Plaintiff's Bivens claims are barred under Heck v. Humphrey, 512 U.S. 477 (1994). Doc. 44 at 5–19. Defendants argue Plaintiff's FTCA negligence claims are also barred under Heck. Id. at 17–19.

I. **Plaintiff Failed to Exhaust Administrative Remedies for His Bivens Claims**

Defendants argue Plaintiff failed to exhaust his administrative remedies for his Bivens claims because Plaintiff did not file a timely administrative remedy request. Id. at 7.

    A. **Prison Litigation Reform Act's ("PLRA") Exhaustion Requirements**

Under the PLRA, an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the

PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 578 U.S. 632, 639 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other procedural rules. Woodford v. Ngo, 548 U.S. 81, 91–92 (2006); Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83

3

(11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000)).  An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit.  Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

To properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process.  Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

**B.     Standard of Review for Exhaustion**

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209.  When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies."  Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v.

4

Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008).

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 638; see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Second, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 643–44. Finally, "when prison administrators thwart inmates

from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 648; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1209 (11th Cir. 2015)); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also

6

Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008)); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

    **C.**    **Applying Turner**

Defendants argue Plaintiff's Bivens claims should be dismissed because he failed to properly exhaust his administrative remedies under 28 C.F.R. §§ 542.10–19. Doc. 44 at 5–8. Defendants contend Plaintiff's attempts to exhaust his claim were untimely. Id. at 7.

    *1.*    *The Bureau of Prisons' ("BOP") administrative remedies process.*

FCI Jesup, where Plaintiff was incarcerated at the time of his claims, utilizes the BOP procedures for prisoner grievances. The BOP's administrative remedy procedure is codified in 28 C.F.R. §§ 542.10–19 and provides for the formal review of inmates' complaints related to their confinement. 28 C.F.R. § 542.10(a).

The first step under the BOP's administrative remedy program is to submit an Administrative Remedy Request using a BP-9 form. 28 C.F.R. § 542.14. An inmate must submit a BP-9 form to the Warden of the institution where the inmate is incarcerated, typically

7

within 20 days of the events which form the basis of the grievance occurred. Id. Late submissions may be allowed where the inmate demonstrates a valid reason for delay. Id. The Warden must respond within 20 days of the filing of the BP-9 form, though a one-time extension of 20 days is available. 28 C.F.R. § 542.18.

If an inmate is not satisfied with the Warden's response, he may submit an appeal using a BP-10 form to the appropriate Regional Director. 28 C.F.R. § 542.15(a). An appeal to the Regional Director (i.e., the "Regional Director Appeal") must be submitted within 20 calendar days of the date the Warden signed the response. Id. Further, the Regional Director Appeal must be accompanied by a copy or duplicate original of the BP-9 form and the Warden's Response. 28 C.F.R. § 542.15(b). The Regional Director must respond within 30 days of the filing of the BP-10 form, though a one-time extension of 30 days is available. 28 C.F.R. § 542.18.

If an inmate is not satisfied with the Regional Director's response, he may appeal to the Central Office at the Office of General Counsel using a BP-11 form (i.e., the "Central Office Appeal"). 28 C.F.R. § 542.15(a). The Central Office Appeal must be submitted within 30 calendars days of the date the Regional Director signed the response. Id. Further, a Central Office Appeal must be accompanied by a copy or duplicate original of the BP-9, BP-10, the Warden's Response, and the Regional Director's response. 28 C.F.R. § 542.15(b)(1). The Central Office must respond within 40 days of the filing of the BP-11 form, though a one-time extension of 20 days is available. 28 C.F.R. § 542.18. The Central Office is the final administrative remedy appeal in the BOP.

Thus, exhaustion requires inmates to first file a BP-9 form with the Warden, then appeal any undesirable response by filing a BP-10 form with the Regional Director, and then, finally,

appeal that decision by filing a BP-11 form with the Central Office.  For a Regional Director Appeal or Central Office Appeal, an inmate must include a copy of the requests made at lower levels of the process, along with any responses.  An inmate is required to complete the steps at each level to exhaust his remedies.

### 2. Plaintiff's claims survive under Turner step one.

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take[] the plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82.

Defendants allege Plaintiff never exhausted his remedies.  Plaintiff alleges the incident that gave rise his claims occurred on February 6, 2020.  According to Defendants, Plaintiff submitted an administrative remedy request about this incident on July 29, 2021, more than 17 months after the alleged incident.  The request was rejected because it was untimely.  Doc. 44 at 7.  Defendants state Plaintiff's appeal was also rejected, and the rejection included a remark from the BOP Office of General Counsel explaining Plaintiff could resubmit his request with a staff memo that established the untimeliness was not Plaintiff's fault.  Id.  Plaintiff did not resubmit the administrative remedy request.  Id.

Plaintiff alleges he was told by his unit manager to submit a "sensitive" BP-10 request directly to the regional office because the institution might retaliate against him.  Doc. 58 at 2.  Plaintiff alleges he submitted a sensitive remedy request on February 24, 2020.  Id.  Plaintiff further states:

> Also when the [sensitive] BP-10 came back I was prosecuted at FCI Jesup by the FBI for [an] Incident Report on 1-16-20 offense.  At FCI Jesup.  I was transfer[red] to a county jail.  Once [I] was convicted for the crime.  I was transfer[red] to [United States Penitentiary, Pollock ("USP Pollock")].

9

Id. at 2–3.  Plaintiff states he filed timely administrative remedy requests at each level.  Id. at 3.  Plaintiff states he requested a memo from FCI Jesup staff about establishing a valid delay for his requests, but he says he never received a response.  Id. at 3.

The parties' factual allegations arguably conflict.  Defendants allege Plaintiff submitted "[t]he administrative remedy request related to the incident" on July 29, 2021, and that request was rejected as untimely.  Doc. 44 at 7.  Plaintiff contends he submitted a sensitive administrative remedy request only 18 days after the incident on February 24, 2020.  Doc. 58 at 2.  Plaintiff does not dispute he submitted another administrative remedy request on July 29, 2021, and the parties agree Plaintiff was told to pursue a memo from prison staff.  Beyond that, Plaintiff's allegations are hard to decipher, but he clearly contends he filed timely filed administrate remedy requests at each level.[2]  Taking Plaintiff's allegations as true, as the Court must, Plaintiff alleges he fully exhausted his available administrative remedies.  The Court must move to Turner step two to resolve the parties' conflicting accounts.

### 3. Plaintiff's claims fail under Turner step two.

The parties' filings present a factual question under Turner step two.  Specifically, the parties dispute whether Plaintiff filed a timely administrative remedy request after the February 6, 2020 incident and, if so, whether Plaintiff made timely appeals to exhaust his administrative remedies.

"[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts."  Womack v. Sikes, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008).  Nevertheless, a judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies.  Bryant, 530 F.3d at 1374 (citing Wyatt v.

---

[2]   Plaintiff does not allege or argue at any point administrative remedies were unavailable.

Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003)).  The Supreme Court has explained "discredited testimony" cannot be relied upon to resist summary judgment, and courts in this district have applied that principle equally when making factual determinations under Turner step two.  See Womack, 2008 WL 4104148 at *5–6 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).  Thus, to the extent Plaintiff relies upon his own self-serving allegations, the Court properly considers whether a "reasonable juror would undertake the suspension of disbelief necessary to credit the allegations."  Id. (citing Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

Failure to exhaust is an affirmative defense which, like other affirmative defenses, puts the burden of proof squarely on defendants.  See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; see also Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial).  Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'"  Womack, 2008 WL 4104148, at *6 (quoting Jeffreys, 426 F.3d at 555).

11

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue").

Defendants and Plaintiff both submitted evidence and argument, showing they had sufficient opportunity to develop the record. Specifically, Defendants submitted the Declaration of Kevin Littlejohn, a BOP paralegal specialist, with attached records. Doc. 44-2. Plaintiff annotated the record of his administrative remedy requests and submitted it with his Response. Doc. 58 at 6. Plaintiff also submitted records of his administrative remedy requests with his Complaint. Doc. 1-1 at 5–8. Thus, the parties have had a full opportunity to develop the record.

After considering the entire record, and resolving any factual disputes, I conclude Plaintiff failed to exhaust his administrative remedies. Defendants focus on the July 29, 2021 administrative remedy request, which described the underlying incident. It is undisputed the July 29, 2021 administrative remedy request was untimely by more than a year. Plaintiff has not offered any reasonable explanation for the lengthy delay in submitting the July 29, 2021 request. Plaintiff asserts he was, for a time, transferred to a county jail in conjunction with a prosecution for an incident that occurred while he was incarcerated at FCI Jesup. Doc. 58 at 3. However, Plaintiff fails to provide any details about that transfer, and he fails to show the transfer prevented him from submitting a timely administrative remedy request. It is also undisputed Plaintiff did not resubmit the July 29, 2021 request with a staff memo as suggested by the Office

12

of General Counsel.  Plaintiff states he asked for a staff memo but did not receive a response.  Plaintiff provides no detail about the request for a memo or any efforts he made to follow up on this alleged request.  There is no indication Plaintiff ever attempted to resubmit the request with an explanation for the untimeliness.  Even here, Plaintiff has failed to explain why the July 29, 2021 request was untimely by more than a year or why Plaintiff could not have submitted the request earlier.  The July 29, 2021 request was plainly untimely and does not constitute proper exhaustion of available administrative remedies.

If the July 29, 2021 administrative remedy request was the only possible request related to the incident, the dispute would easily resolve in Defendants' favor.  However, Plaintiff maintains he submitted a timely "sensitive" administrative remedy request on February 24, 2020, outside of the typical administrative remedy framework, and this request fully exhausted Plaintiff's administrative remedies.  The February 24, 2020 "sensitive" administrative remedy request requires further analysis.

The BOP Regulations establish a mechanism for filing "sensitive" administrative remedy requests outside of the ordinary administrative remedy framework if the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the request became known at the intuition.  28 C.F.R. § 542.14(d)(1).  "Sensitive" requests are filed directly with a Regional Director.  To file a sensitive request, the inmate must "clearly mark 'Sensitive' upon the Request and explain, in writing, the reason for not submitting the Request at the institution."  Id.  If the Regional Administrative Remedy Coordinator disagrees the request is sensitive, the inmate will be informed of that determination, and the inmate can pursue the matter by submitting a request to the Warden at the institution.  In those circumstances, the Warden must allow a reasonable extension of time for the inmate to resubmit the request locally.

Plaintiff's "Administrative Remedy Generalized Retrieval" record shows Plaintiff submitted a "staff complaint" on that February 24, 2020. Doc. 44-2 at 11. This record does not describe the nature of the staff complaint. The record shows this staff complaint was rejected on April 2, 2020. Id. The record does not show Plaintiff appealed the rejection of the staff complaint. Neither the "staff complaint" nor the rejection have been submitted to the Court. Aside from Plaintiff's allegations, the only document in the record that mentions the February 24, 2020 staff complaint is Plaintiff's administrative remedy history.

Even if I assume the February 24, 2020 staff complaint adequately described the incident underlying Plaintiff's claims in this case and was a proper "sensitive" request,[3] I would still conclude Plaintiff did not exhaust his available administrative remedies. Plaintiff was required to appeal the denial of his sensitive administrative remedy request to the Central Office using a BP-11 form. 28 C.F.R. § 542.15(a). Plaintiff was required to appeal, even if he did not receive a response from the regional director. 20 § C.F.R. 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."); see also Montalban v. Samuels, No. 21-11431, 2022 WL 4362800, at *3 (11th Cir. Sept. 21, 2022) ("Even if [plaintiff-appellant] did not receive responses to his requests, the [administrative remedy] process required him to nevertheless proceed to the next level to properly exhaust his remedies.") (citing § 542.18). Plaintiff does not allege he appealed the rejection of his February 24, 2020 staff complaint to the

---

[3] I do not, at this time, conclude the February 24, 2020 staff complaint adequately described the incident or was a proper "sensitive" administrative remedy request. Nothing in the record speaks to the content of the staff complaint. And nothing shows Plaintiff marked the complaint as "sensitive" or described the reasons for not submitting the request to the institution, as the Regulation requires. The date of the February 24, 2020 staff complaint does align with Plaintiff's narrative and supports the conclusion the complaint concerned the February 6, 2020 incident. Beyond that, it is impossible for the Court to determine the contents of the complaint.

14

Central Office and there is nothing in the record suggesting he did appeal. Therefore, even if the February 24, 2020 staff complaint constituted a valid initial attempt at exhaustion, Plaintiff did not complete the process because he did not appeal the rejection of the request.

In sum, the record shows under Turner step two Plaintiff failed to exhaust his administrative remedies. Therefore, I **GRANT** Defendants' Motion to Dismiss Plaintiff's Bivens claims. Because I dismiss Plaintiff's constitutional claims for failure to exhaust, I decline to address Defendants' arguments based on the availability of excessive force claims under Bivens and the defense of qualified immunity.

## II.    Plaintiff Abandoned His FTCA Claims

Defendants argue Plaintiff's FTCA claims are barred under Heck v. Humphrey, 512 U.S. 477 (1994), because judgment in Plaintiff's favor would imply the invalidity of a prison disciplinary proceeding. In his Response, Plaintiff addresses other arguments Defendants raise, but Plaintiff does not mention his FTCA claims or Heck v. Humphrey. See Doc. 58.

A party abandons a claim when it fails to respond to an argument in a motion to dismiss that a claim is subject to dismissal.[4] See Onyeogoh v. Cucinnelli, No. 1:20-CV-3584, 2020 WL 13544294, at *1 (N.D. Ga. Nov. 24, 2020) (collecting cases); Perez v. City of Opa-Locka, 629 F. Supp. 3d 1164, 1174 (S.D. Fla. 2022) (finding the plaintiff abandoned his punitive damages

---

[4]    At least one district court within the Eleventh Circuit has rejected this abandonment principle. See Gailes v. Marengo Cnty. Sheriff's Dep't, 916 F. Supp. 2d 1238, 1243–44 (S.D. Ala. 2013) (discussing abandonment at length and declining to "treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss"). However, the greater weight of authority supports the view that failure to respond to a motion to dismiss constitutes abandonment of a claim and a district court may dismiss an abandoned claim. See, e.g., Jones v. Bank of Am., N.A., 564 F. App'x 432, 434 (11th Cir. 2014) (concluding party abandoned claim by failing to respond to arguments raised in a motion for summary judgment); Gore v. Jacobs Eng'g Grp., 706 F. App'x 981, 986 (11th Cir. 2017) (concluding party abandoned claim by, among other things, failing to respond to arguments the district court should dismiss the claim).

claim because the plaintiff's response to the defendant's motion to dismiss "wholly failed to respond" to the defendant's immunity argument); Goldwire v. Alston, No. CV421-95, 2022 WL 680194, at *7 (S.D. Ga. Mar. 7, 2022) (finding the plaintiff abandoned her negligence and negligence per se claims because she failed to address them in her response to the defendants' motion to dismiss).

Plaintiff did not respond to the portion of Defendants' Motion to Dismiss seeking dismissal of Plaintiff's FTCA claims. Therefore, Plaintiff has abandoned his FTCA claims. Accordingly, I **GRANT** Defendants' Motion to Dismiss Plaintiff's FTCA claims on this basis.

### III. Leave to Appeal in Forma Pauperis

The Court also denies Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is appropriate to address this issue in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (providing trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An in forma pauperis action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal

16


v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court **DENIES** Plaintiff in forma pauperis status on appeal.

## CONCLUSION

For the foregoing reasons, I **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's Complaint in its entirety, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

**SO ORDERED**, this 14th day of March, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA